Number 06-1497. Mr. Wyatt, why don't you give the courtroom, give the people a little bit of time to move out of the courtroom. Thank you, Your Honor. My name is Doug Wyatt. I represent the opponent in this case, Ultraflex Technology and Todd Addison. This is an appeal from the granting of a motion for summary judgment from the court down in Charlotte, South Carolina. The court found that the two patents in suit were invalid because of the fact that they were on sale more than one year prior to the filing of the patent application. The critical date here for the activity is March 8, 1999. We'd like to point out to you, Your Honor, that the court below made two fundamental errors in its decision. The first error related to finding that a prototype of the band existed. And the second error where the court found that there was a written description which would fit within the terms of the FAF case to find this subject matter to be unpatentable. The lynchpin of the court's decision was the photographs attached as Exhibit 5 to the judge's opinion. Exhibit 5 clearly on this record is the same record as plaintiff's Exhibit 2 during the deposition of Kossoff and other witnesses. It is the court made a flat-out error in using that Exhibit 5 as the basis for its decision in finding the subject matter to be on sale. What was the error that was made by the court? The error that was made was that, in fact, Exhibit 5 was an actual commercial product delivered after the critical date. The key testimony is given by Ms. Kossoff. She testified as follows to that very point, Your Honor. Question. Can you say surely? What page? What page were you on? I'm on page—excuse me a moment, Your Honor, and I'll find it for you. If you—our reply brief— You don't have the appendix? It's page 9, Your Honor, of our reply brief, the bottom of that page, where the question posed—and this is the lynchpin of this case. It's the most important testimony in the case. Question. Can we say fairly, surely, that between February 17, 1999, and March 9, 1999, it is unlikely that you received a bag of the type shown in Plaintiff's Exhibit 2, the plastic bag? Answer. Until they shipped Gateway, I could not have seen it. Question. Sometime after the critical date, March 19, 1999. Answer. Right. The trial judge's lynchpin of this entire decision is based on the finding that that photograph in Exhibit 5 was a piece of prior art or was a prototype or product made before the critical date, and it flat out is not on this record, Your Honor. What about the testimony of page 95 of the appendix? 95, Your Honor. Yes. And that says, question, did Mr. Salerno present you with the bag that's exemplified by Plaintiff's Exhibit 2, the plastic bag right in front of you? Answer yes. Yes, Your Honor. Exhibit 2 is the same exhibit as Exhibit 5 of the judge's opinion, and it was clearly that that Exhibit 2, Mrs. Kusloff's testimony, is that that did not come into existence until after the critical date. I mean, it's clear on this record, Your Honor. Does that answer your question? Well, she was shown something. Well, here's what she was shown. She was shown—well, let me just get specifically to it. On 95, Your Honor, she was asked, did Mr. Salerno present you with the bag that exemplified by Plaintiff's Exhibit 2, the plastic bag right in front of you? Answer yes. And the court's finding at A3, Salerno also delivered a prototype of the bag at issue directly to Donna Kusloff. That's Exhibit 2, which Donna Kusloff testified she had never seen until after the critical date. And in that question, did Mr. Salerno present you with the bag, there's no proof as to when that was. Neither Salerno or Kusloff testified that any bag submitted to Kusloff by Salerno was a prototype. So Exhibit 2 was clearly not a prototype, but was the production bag. Mr. White, you have really two elements on the fact, right? Yes, Your Honor. To prove one is commercial use. Yes, Your Honor. Prior to the critical date. Yes. And or it becomes subject to— Yes, Your Honor. And whether or not there's a— It's ready for patentability. And the written description this court found was from Exhibit 5. But are you arguing that there was no commercial offer for sale? We are arguing there was no commercial offer of the invention for sale. There can't be a commercial offer of the invention until the invention exists. We submit to Your Honor that no, there is nothing on this record to show that any product existed prior to March 8th, 19— What about Appendix Page 200? Appendix Page 200, Your Honor. There's a quotation showing a date of January 29th, 1999. May I find that, Your Honor? 200. That is, if a quotation, Your Honor, that's related to—200 is also related to the order from Gerber, which says on there, please pull the plug based upon Donna's suggestions, chip hook, no chip hook. But there's also one for Gerber chip, right? Yeah, so what this is, Your Honor, in response to that, they said when we have the Gerber chip ready, and if we're able to make it, we will supply it, but in the meantime— But that was an offer for sale prior to the critical date. That was an offer for sale prior to the critical date, but not of the invention, Your Honor. The invention did not exist as of that date. And the record is absolutely black and white on that issue. What bag was the note on the bottom of this request? Yes. What bag with the chip hook was she referring to if it was not the invention? All right. There were two bags here, Your Honor. There's a bag with a hole, and there's a bag with a hook. And the one that became with the chip hook. The bag with the chip hook, as of this date, January 29th, 1999, did not exist. All there was was a chip at that time. There was no bag at all. Even if we accept that as truth, that the only thing in existence was the chip— Yes, Your Honor. —and the bag— Yes, Your Honor. Well, no bag, Your Honor. Well, she was shown a bag. No, she was not, Your Honor. There is no record on this case where she was shown a bag prior to March 8th, Your Honor. And that's—you've laid that out in our reply brief, black and white. That never happened. You're saying her testimony on page 95, as to what Mr. Salerno showed her, took place after the critical date? It had to. It was Exhibit 2. And Ms. Kusloff said Exhibit 2 was not in existence. She could not have seen it until after the critical date. But her testimony at page 95 is not limited to Exhibit 2. It's a bag exemplified by Exhibit 2. Well, there's no other—well, let me just—let me get that testimony again. Let me continue on with the testimony, because after that question, you know, did Mr. Salerno present you with the bag exemplified by Exhibit 2? Yes. Question, from your knowledge of what was occurring at that time, under size, then, the second row, it says 5 1⁄2 by 11 plus 1 quarter header plus 1 half with lip plus Gerber chip. Is that the Gerber chip referred to there, the chip that's in Exhibit 2? Yes. Well, Your Honor, the chip of Exhibit 2 did not exist in a bag prior to March 8th, Your Honor. Well, even if it didn't, if she was shown the bag and if she was shown the chip, that presumably led to the order that she placed, isn't that enough? In the light of the simplicity of the subject matter here, one can conclude, I think, readily enough that one of ordinary skill in art could easily have put two and two together. A plastic bag and a chip, Your Honor. Correct. I understand that, Your Honor, and I say the answer to that is absolutely no on this record. Counsel? Yes, Your Honor. Counsel? Yes. Will you turn to page 116 for me? 116. In the appendix. She further elaborates, doesn't she, on the bag, where she explains the plaintiff's Exhibit 2 answer, plaintiff's Exhibit 2, an actual bag. At some point after that, I do receive samplings. When that date was, I honestly could not tell you. Can we fairly say it's between 217 and March 9? It's unlikely you received a bag of the type shown in Plaintiff's 2, the plastic bag. And she says, until they shipped Gateway, I could not have seen it. So it seems to me, isn't she there further elaborating on the exact timing at which she saw the very bag that my colleague is pointing at? Yes, Your Honor, and that's the bag of Figure 2, of Exhibit 2, and at no time prior to that time had she seen any bag whatsoever. So the correct interpretation you would suggest, then, is at page 95, she's admitting she did see something that Mr. Salerno showed her, but she's not admitting she saw it before the critical date. Yes, Your Honor. And in fact, she's completely saying the exact opposite at page 116. Yes, I agree with that 100%. That's your position, right? That is my position. I want to make sure I understood. To me, that's the key evidence on this record, is Ms. Kusloff saying that the bag of Exhibit 2, which the court found was its linchpin, that bag of Exhibit 2 was the product that was not made until after March 8, 1999. Mr. Wyatt? Yes, Your Honor. On page 306, there's an affidavit of Mr. Todd Addison. In paragraph 12, it shows prior to March 8, 1999, I had developed a plastic chip shown in figure 3 of the patent drawing. Yes, Your Honor. They showed a handmade chip to personnel in the Gerber Company prior to March 8. Yes. How do you answer that? Well, we answer that, Your Honor, the prior art, and I think Judge Lynn's question was to that same point. The prior art in this application describes chips and bags are well known in the prior art. And then this went up to reexamination. You can't just say, Your Honor, we have a chip, therefore you make a bag to it. This is a special bag made under the detailed claims of this patent. There's numerous prior art, which we set out, which include chips plus bags, and it went up on reexamination on just exactly that point, and the court found the claims to be valid for a chip and the specific claims for this bag to be valid after the date. So the trial court did what went to really almost exactly did that. The trial court basically found that once it had the chip, it felt that that was all that was necessary. It said, having made a handmade chip and shown it to personnel at Gerber negates defendant's assertion that there was no sin. The chip is not the patented subject matter. The court went on, on page 10, says that the inventor admitted he had developed a plastic chip shown in the patent prior to March 8th, and that's no question, he had the chip. Then the court jumps, he goes from the plastic chip to the bag, and in that very next sentence, it was this bag. There was no bag shown. Gerber was shown a plastic chip and not a bag. Counsel, if I understood the district court's opinion, he found ready for patenting on the basis of a prototype, of which a chip standing alone is not, it doesn't show the bag, transversely folded and all that other stuff, and he said alternatively exhibit five, and here's the part that really gets me. All this was on summary judgment. So to the extent, let me tell you, to the extent I may not agree with you about what Ms. Kussoff's testimony says, on summary judgment, I have to resolve every fact in your favor, right? Yes, Your Honor. Isn't that right? I mean, so if there's a dispute in the factual testimony of Ms. Kussoff, I have to give you the benefit of the doubt, not the district court. I don't give them deference. Absolutely, and you have to bend over and give our testimony in the best light. We have three affidavits in here saying there was no invention of the bag itself, Your Honor, which is quite different than just any plastic bag and a chip. It's a special bag made in accordance with the claims of this patent. And the court... Mr. White, you're well into your rebuttal time. I'm sorry. So I will restore two minutes of your time and give you an opportunity to reply. Thank you so much, Your Honor. Mr. Butler? Good afternoon, Your Honors. I am Steve Butler, here on behalf of Robert Polleypro and with me are Jeff Metzgar and John Hardaway. Judge Moore, you hit the issue on the head. The question is, was this device ready for patenting before the critical date? We know that there are a couple of ways to show ready for patenting under FAF, one of which is the existence of a prototype. And the discussion here today and in the briefs has been focused primarily on whether there was a prototype prior to the critical date. You also pointed out, Judge Moore, that this is summary judgment, that you're here to take a look at the record de novo. We all know that courts of appeals review results, not reasons. So for the sake of the discussion today, let's assume that there is a question of fact about whether the prototype existed prior to the critical date. Let's assume that the bag that was marked as Exhibit 5, Exhibit 2, was not shown to Ms. Kusoff ahead of time. Under this record, however, when you take a fresh look at the record, you still have to reach the conclusion that there is no question of fact about whether or not this invention was ready for patenting. The Supreme Court said in FAF that there are at least two ways, as I said, of showing ready for patenting. One is the prototype, let's forget about that. The second is that proof before the critical date that the inventor had prepared drawings or descriptions of the invention that were sufficiently detailed to enable a person skilled in the art to practice the invention. The court was correct in entering summary judgment, Your Honors, because the record shows without question that Mr. Addison, the inventor who submitted the affidavit and who was deposed, made enabling disclosures of both of the patents five days before the critical date. Where is that in the record? You see in his affidavit, he says that five days before the critical date, Ultraflex's engineers were setting up a machine on which they could practice the patented method to make the patented product at high speeds. Can you show me where that is? Are you at page 307? Which paragraph are you referring to? Paragraph 19. There is no conceivable way that those engineers could have worked to adapt or set up their machinery to run the patented method at high speeds unless Mr. Addison had told them what he wanted them to run. But then you also have a second sentence at the end of there, where it says we did not successfully make the patented package with the patented method before the critical date of Monday, March 8th. That's correct, Your Honor, and that goes to whether or not a prototype existed. I'm talking simply about whether or not Mr. Addison made an enabling disclosure prior to the critical date. And I'd like to focus on one of this court's decisions, robotic vision systems versus view engineering. I think it's directly on point. In that case, the method patent issue was for a scanning method for collecting three-dimensional data. There was no question about whether there was a commercial sale. The question was whether the invention was ready for patenting. The inventor said no. I haven't written the software yet needed to implement the claim method, and I have my doubts about whether it'll ever happen. Altreflex is essentially making that same argument here. I haven't put together the high-speed production equipment on which to practice this method, and as of March 3rd, I didn't know whether I'd succeed. This court held that neither of those circumstances meant that the invention was not ready for patenting. It's irrelevant that something needed to implement the claimed invention didn't exist before the critical date. The determinative fact in that case was that the inventor had given one of his employees a sufficiently detailed description of his invention to enable that employee to begin writing the software. Here's the question. That's what I don't get. I don't see that in 19. I agree with you on the whole commercial mass production argument. That's not what the claim calls for. That's clearly not what's required. But I don't see in Claim 19 evidence that there's no dispute of fact over whether there was an enabling disclosure. Your Honor, I suggest that that is inherent in 19, that he cannot have his engineers setting up the machinery to run the method at high speed unless he first tells them what the method is. Don't you think that's something that needs to come out, though? That's clearly a question of fact, right? You're telling us, assume... Look, I could give you instructions on how to set up a process for making something without necessarily telling you all the ingredients or the thing I'm making or anything else such that it would not be an enabling disclosure. Don't you think that's exactly the kind of fact that needs to go to a jury? Well, Your Honor, I don't believe so. As Judge Lynn said, this is not the most complicated invention. The claims of the method are almost inherent in the description of the apparatus. And I think that this Court can reach a conclusion that is common sense on this record that these engineers, just as in the robotics case, that was summary judgment as well. The fact that the inventor there disclosed to his engineers enough about the inventions to enable them to write the software for, this Court held to be an enabling disclosure. But, Mr. Butler, we would have to tease a lot of those facts out of the record. They're certainly not in the judge's opinion below. Your Honor, they are not in the judge's opinion, but I think if you look at the record de novo, those conclusions from the record are inescapable. Remember, summary judgment is inappropriate only when there are genuine issues of material fact. And I submit that the conclusion that these engineers could not have set up the machinery to run the method at high speed unless they had been told what the method is, is inescapable, and it does not constitute a genuine issue of fact. But they didn't even set the machinery up. The very paragraph you cite says they weren't able to set the machinery up to make it operate by March 8th, so it makes me question whether there was an enabling description, and that raises a fact. Well, the fact that they could not do it by March 8th, if you look forward, it suggests in there that they tried to do it on the 4th and the 5th. We have no idea from this exactly what he told them. The words that Mr. Addison used to them, you're right, Your Honor, are not disclosed in the record. But I believe that as in the robotic case, it is appropriate for the court to conclude that there can be no genuine issue, but that he told them enough to have them begin to attempt to set up the machinery. Again, as I said, the fact that they did not succeed before the critical date does not mean that he did not make an enabling disclosure to them. They were taking existing machinery in their plant and adapting it to this particular method. But you want us to infer that he must have told them enough even though he didn't succeed. I mean, that's an inference. That's something that seems to me to be a fact that's very hard to overcome. Like, what if he didn't tell them about the J-clip? What if he didn't tell them about the transverse folding? What if they're one of the claim elements that he didn't tell them, which is why the whole thing didn't work in time? Let me go on, then, to the second reason why I believe there's no issue of fact here. And if you go back to Pfaff, Supreme Court says in Pfaff that there are at least two ways. If you look at footnote 14, it suggests another test. And that test is whether the evidence is sufficient to prove that the invention was ready for patenting at the time of the sale if it is clear that no aspect of the invention was developed after the critical date. Again, Your Honor, I think we have sufficient evidence in the record for this court to conclude that there was no aspect of this invention developed after the critical date. Except for mass production. You're saying that there were no critical facts except for mass production. Mass production is not a claim to the patent. That's right. It's got nothing to do with the patent. So whatever is claimed in claim 14 is sufficient with the evidence that we have from the affidavit itself? Yes. And there are four reasons for that. All right. Number one, Ultraflex and Gerber entered into an agreement for the sale of 30,000 of the patented bags on February 12th. If you look before at a couple of the documents, and I don't know if this is the same page, but if you look on 201 of the joint appendix, that's the contract. That is Ultraflex acknowledgment in agreement to provide the bag with the chip hanger. And Mr. Addison testified that what they agreed to provide was, in fact, the bag that he patented. So there's no question but that Ultraflex is agreeing to provide the chip hanger on February 12th. Whatever uncertainty had existed before in the documents that you were shown had been cleared up enough by the time of the 12th that Ultraflex could, in fact, enter into a contract for the patented item. Where's the testimony that he made clear what it was that was being ordered on the 12th? Mr. Addison admits that the product that— We're in the record. Are you in the record? —Joint Exhibit 162, Deposition Exhibit 7—Joint Exhibit 162. I'm sorry, Joint Appendix 162. 162. Question, do you know what it was a quotation for? Answer, I believe it was for the bag that you referenced in your previous exhibit, Exhibit 2. Now, you'll see in Ultraflex's brief that they admit that the bag shown as Exhibit 2 is identical to the bag shown as Exhibit 5 and that it is the patented product. He goes on and says, do you believe that Admission Exhibit 2, which is responsive to Exhibit 1, which you indicated was a request for a quotation? Answer, yes. So he's referring again to the document that represents Ultraflex's acceptance refers to the patented bag. But, counsel, don't you believe that we have a lot of precedent that says—this is two separate tests. One, was there a commercial offer for sale, and two, was the thing offered ready for patent? Yes. So it's possible that there could be a commercial offer for sale, and the inventor fully intends that offer to encompass exactly what ultimately becomes all the claim limitations, but that by the critical date, that thing is not ready for patent. Well, this Court has addressed that precise issue before. In STX v. Bryan, Inc., it affirmed summary judgment of invalidity under the on-sale bar. And I quote, STX's confidence that its invention was complete and operative is reflected in the fact that the BART's sale was for a commercial quantity. So the fact that Ultraflex was able to enter into a contract to sell 30,000 of these things is under STX's evidence that it was confident that the product was ready to go. There's another fact. On March 3, 1999, five days before the critical date, Ultraflex took delivery of 42,000 pounds of these little plastic chip hooks. Now, as Mr. Wyatt said, the novelty of this invention was the inclusion of the plastic chip hook rather than a whole or an extended hook in the header. Why would they order 42,000 pounds of these little tube plastic chips that they had delivered from Israel if they weren't certain that the invention was ready to go with those chips? Maybe they were taking a chance that it would. 42,000 pounds, Your Honor, is a big chance. But maybe they could have used that J-clip in a different bag that wouldn't exactly have fallen on these claims. I mean, that J-hook is not necessarily a good that has one use and one use only with the patented bag exactly as claimed. They could have incorporated it into a prior art bag of some sort, couldn't they? Well, Your Honor, the only novelty of this invention was the use of the J-hook in bags that were well known in the prior art. So, no, the only thing that they were going to use these J-hooks for was this bag. They could have easily used these J-hooks with a bag that wasn't transversely folded but was folded in some other way and thereby wouldn't necessarily fall within these claims and we wouldn't have an anticipation, correct? There is no evidence in the record that they ever considered doing that. There is no evidence in the record that they ever considered anything at all for those J-hooks other than to practice this patent method. There's one other item, I think, Your Honor, perhaps this is the most telling, and that's Mr. Addison's own epidemic. As we've been talking, he goes on at length to talk about how after the critical date they set up machinery to run this method at high speed. Conspicuously absent from this record, however, is one word from Mr. Addison about what he did after the critical date to complete the invention. Were there aspects of this method that he had not finished in time for his people to run it at high speed? Did he come up with new ideas when they were trying to run it at high speed? That's evidence that's entirely within his control. But counsel, who has the burden of proof here? This is unsummary judgment. Yes, it is, Your Honor. And it's a validity challenge. It is, it is, but under Anderson versus Liberty lobby and summary judgment precedent, a non-movement cannot just rely on general denials. The non-movement has to come forward with specific facts to show that there is a genuine issue for trial. And on this question, if there were facts that showed that there was a genuine issue about whether development was done after the critical date, Mr. Addison would have known it, and under the summary judgment jurors' proofs, it was incumbent on him to come forward with it. So I think, again, regardless of whether the court agrees or does not agree with whether there was a prototype, that there is more than sufficient evidence in this record for a de novo review and an affirmance of the summary judgment order below. Thank you very much, Mr. Butler. Mr. Wyatt, you have two minutes. Thank you, Your Honor. Your Honor, as to the point as to what bags could be supplied under the contract, Ms. Kossoff was the Gerber representative. And at page 110 of the record, she was asked, there had to be conversations between Ultraflex and myself that there was some kind of difficulty in preparing a chip or getting a chip or to do with a chip. So you at Auburn and Gerber would be happy if under this order you were supplied with a bag that had a hole without a chip, at least for the initial order. Is that correct? Answer, correct. So they could have supplied that initial order with the unpatented bag with the hole in it. As to the condition of the work that was done on this invention, the three affidavits in this file, Mr. Salerno, Ms. Keegan, and Mr. Addison, setting forth what we did after the critical date to put this invention in order. And, Your Honor, this is a technical offense. There's nothing inequity or criminal about the fact that we are only a few days away from the critical date. It's a technical offense. They have not made their technical defense here, certainly not enough to support a motion for serving judgment. Thank you, Your Honor. Thank you very much. The case is submitted. All rise. Thank you.